## 17160

JAMES H. CARTER, Administrator of the Estate of Herbert John DeRyder, Deceased, Respondent, v. W. F. PEACE and SEABOARD AIR LINE RAILWAY, a Corporation, of whom the latter is, Appellant.

(90 S. E. (2d) 113

*Messrs. Smith & Moore,* and *C. C. Grimes, Jr.,* of Georgetown, and *Paulling & James,* of Darlington, *for Appellant,*

*Messrs. Thompson & Poteat, Rosen & Rosen* and *James B. Morrison,* all of Georgetown, *for Respondent,*

*Messrs. Smith & Moore,* and *C. C. Grimes, Jr.,* of
Georgetown, and *Paulling & James,* of Darlington, *for Appellant, in Reply,*

May 15, 1956.

STUKES, Chief Justice.

Plaintiff's intestate, who was a seventeen-year-old New Jersey boy en route to Florida, suffered injuries from which he died in a few hours, when his 1950 Ford automobile in which he was traveling collided with a train of appellant at a highway grade crossing of the railroad in a rural section of Georgetown County. The automobile struck the side of the diesel locomotive about twenty-five feet from the front of the locomotive, behind the cab of it. There was another youth in the automobile, who was killed instantly. The evi-

dence is rather conclusive that plaintiff's intestate was driving the automobile, as to which there is no question in the appeal; the collision was of such force that it was demolished, and the locomotive was badly damaged and its air-brake and fuel systems put out of commission. The accident occurred at about three o'clock in the afternoon during rain which was accompanied by thunder and lightning.

There were no eyewitnesses who testified other than members of the train crew, except the occupant of another automobile which was about a half mile behind the automobile of decedent; he testified that he saw the brake lights of the latter go on, quoting from his testimony, "just before it ran into the train." A nearby resident heard the crash and he and his wife promptly went to the scene.

This action for damages for alleged wrongful death was brought against the appellant railroad company and its engineer who was operating the locomotive. It was alleged in the complaint that the collision was caused by one or more of the following concurring acts or omissions of the defendants: (a) the engineer-defendant was operating the locomotive at an excessive rate of speed under the existing conditions; (b) the defendants failed to maintain a proper lookout for highway travelers; (c) the engineer failed to keep the locomotive under proper control under the conditions; (d) he was operating the locomotive at an excessive rate of speed over the U. S. Highway which was much used by nonresidents, unfamiliar with the grade crossing; (e) the locomotive was equipped with improper brakes or the engineer failed to properly apply them; (f) the defendants failed to provide a sufficient train crew; (g) the defendants failed to provide adequate signals and devices to warn highway travelers of the approach of the train, under the conditions; (h) the railroad company failed to keep unobstructed the area contiguous to the crossing, whereby visibility of it was impaired; and (i) the defendants failed to comply with section 58-743 of the Code of 1952 requiring bell or whistle signals at grade crossings.

The answer contained a general denial of the material allegations of the complaint and a plea of contributory negligence, recklessness and wilfulness, in specified particulars, of the driver of the automobile.

At the conclusion of the evidence the defendants moved for direction of verdict upon grounds which included contributory negligence; and upon denial of that motion, separately moved for withdrawal from the jury of certain of the specifications of negligence for lack of evidentiary support. The latter motion was granted only with respect to specification (f), which alleged an insufficient train crew, and that part of (e) alleging improper brakes.

The jury returned verdict for plaintiff for actual and punitive damages against the railroad company alone, thus acquitting the engineer-defendant of negligence, etc. On that ground, and others, the defendant railroad company moved for judgment notwithstanding the verdict. The motion was refused upon the conclusion that while the verdict discharged the company on the issues of speed and failure to give the statutory crossing signals, there remained specifications (b), (g) and (h). The court construed (b) to include the failure to keep a proper lookout through the agency of someone, in addition to the train crew, at the crossing; and (g) to charge negligence in the failure to maintain adequate warning signals and devices at the crossing; and (h) to include area without the right of way, and it was held that while the company did not have the right to remove obstructions outside of its right-of-way the existence of them required it, quoting from the order, "to take such steps as may be necessary to warn the traveling public of the existence of the obstructed crossing by reason of the very fact that the obstructions are without the right of way."

The evidence of the crossing signals was in conflict, whereby motion to direct the verdict was rightly refused. However, it being the duty of the engineer to give the statutory signals, which he testified that he did, the effect of the verdict in his favor was to establish that they

were properly given. Similar observation is applicable to the other specifications of alleged negligence on his part, such as the speed of the train, his lookout, etc. It was alleged in the complaint that he was operating the locomotive, and the evidence so established and that he was the sole occupant of it.

In view of this result of the verdict, it is easily seen from consideration of all of the evidence, that there was none to support the findings of recklessness, wilfulness or wantonness, which was implicit in the verdict for punitive damages. The statutory, Code Sec. 58-999, requirement of signs at the crossing was fully met; there were two cross-arm crossing signs which the photographs in evidence show were clearly visible. In addition, about four hundred feet from the crossing, as decedent approached it, there was a State Highway sign warning of the railroad crossing. The speed of the train was about forty-five miles per hour, which it is not contended was in violation of any applicable statute or regulation.

In the absence of wilfulness and wantonness in the conduct of appellant, contributory negligence was a defense to the liability of the company for any alleged negligence which the jury may have found.

The only reasonable inference from consideration of all of the evidence is that contributory negligence was a proximate cause of the collision. There were obstructions on land adjacent to the right of way, including an oak tree and smaller growth, but the right of way was clear of obstruction and when the decedent reached a point abreast of the tree, on his left, which was thirty-two feet from the center line of the highway, he was sixty-three feet from the track on which the train approached, and his view of it was then clear and unobstructed for an indefinite distance. He could not have looked for the train without seeing it, or listened without hearing the signals, in time to avert the collision, if he had been driving his car in a reasonably prudent manner and heeded the warning signs. The mute

evidence of the effects of the impact shows that he did not materially, if at all, slacken his speed before crashing into the side of the locomotive. The conclusion is inescapable that he was guilty of at least simple, contributory negligence; it is the only reasonable inference of which the evidence is susceptible.

*Carter v. Atlantic Coast Line Railroad Co.*, 194 S. C. 494, 10 S. E. (2d) 17, is perhaps the leading case upon the principal issue in this appeal. It involved the death of a motorist from injuries received in a collision between his automobile and a train at a grade crossing in the town of Timmonsville. The action was brought against the railroad company and the engineer upon allegations of negligence much like those in the instant case. There were obstructions to the view of plaintiff's intestate which were created by the freight depot and boxcars upon a sidetrack. The jury absolved the engineer from all delicts by finding a verdict in his favor and against the railroad company alone. It was held that judgment for the company notwithstanding the verdict should have been granted upon the conclusion that the location of the building and boxcars could have constituted negligence only when taken in connection with the operation of the train and if the train was operated without negligence or wilfulness, as was established by the verdict in that case (and this), the verdict against the company alone could not stand.

A case of even more similarity to this is *Taylor v. Atlantic Coast Line Railroad Co.*, 217 S. C. 435, 60 S. E. (2d) 889, 891. There the complaint expressly charged negligence in the failure to provide automatic signal lights, or a flagman or watchman at the crossing, as respondent contends was substantially alleged in this case. There was also a tree at the crossing in the *Taylor case,* larger than that in this case, and, more important, it was on the railroad right of way, which constituted a considerable obstruction to the view of the approaching train. The verdict in the action, which was brought against the railroad and the engineer,

was against the company alone, thus exonerating the engineer-defendant of all delicts alleged against him. Judgment upon the verdict was set aside for error in the refusal to enter judgment *non obstante veredicto*. We said in that case, applicable here:

"In view of the presence on the railroad right-of-way of the large liveoak with low-hanging branches and the other circumstances of the crossing, including the heavy highway traffic over it, the jury may have been warranted in finding that appellant should have maintained special warning devices or stationed a flagman at the crossing; and it is apparent that some such consideration occasioned the verdict for actual damages, simple negligence, against appellant; but in our judgment there was no room for reasonable inference other than that respondent was also guilty of negligence in his total failure to make prudent use of his senses of sight and hearing as he approached the crossing, which contributed to his injury as a proximate cause. The physical facts of the crossing, fully demonstrated by the maps, measurements and photographs in evidence, leave no doubt of the soundness of the conclusion. It is inevitable under all of the facts in evidence. It is elementary that a railroad company and a highway traveler have correlative duties which require both to exercise at least average care and prudence in such cases and when the evidence is susceptible of only one reasonable inference with respect to a controlling issue, it becomes a matter of law for decision without reference to the jury. *Bishop v. Atlantic Coast Line R. Co.*, 213 S. C. 125, 48 S. E. (2d) 620, and *Arnold v. Charleston & Western Carolina R. Co.*, 213 S. C. 413, 49 S. E. (2d) 725 (both opinions), and the numerous earlier, apposite decisions there cited."

The trial court in the case at bar was influenced to refuse the motion for judgment *n. o. v.* by *Allen v. Southern Ry. Co.*, 218 S. C. 63, 61 S. E. (2d) 660, which, however, the facts clearly distinguish. There the crossing was obscured by growth upon the right of way and at the time of the col-

lision there was a dust storm of such severity that the train crew could not see the track in front of the locomotive. In contrast, despite whatever rain was falling, here a motorist who was following decedent saw the latter's automobile and its brake lights at the time of the collision, from one-half mile behind; the neighbor saw the train (and heard it blow for the crossing) from his home about three hundred feet away; his wife, in her upstairs bedroom, heard the collision, went to the window and saw the wrecked automobile at the crossing; and the engineer was able to see that no passenger was waiting at the flag stop, which he determined before reaching the whistle post over five hundred yards from the crossing. There were no railroad signs at the crossing in the *Allen case,* which was in violation of statute; here there were. It is seen from this partial review that the facts of the *Allen case* and this case are not comparable and the court erred in applying that authority to this.

Respondent submitted additional grounds to sustain the judgment, Supreme Court Rule 4, Sec. 8, the first of which follows:

"That even though the defendant engineer was exonerated by the jury, there was sufficient evidence in the record of negligence, wilfulness and recklessness of other agents of the appellant as to excessive speed and the violation of the crossing statutes upon which the jury could have properly based its verdict."

The record does not reflect that this proposition was presented and passed upon in the trial court and it will, therefore, not be considered on appeal. See the multitude of decisions in 3 S. C. Dig. 331 *et seq.,* Appeal and Error, 169 *et seq.* In the order after verdict the court held as follows, to which holding there was no exception: "The verdict of the jury is tantamount to a discharge of the master on any issue of speed or violation of the statute requiring the signal to be given upon approach to crossings."

The members of the train crew (except the baggage master, who was sick at the time of the trial) testified and all of

them were cross examined at length by respondent's counsel; but no effort was made thereby, or otherwise, to adduce evidence that it was anyone's, other than the engineer's, duty to operate the train at a reasonable speed under the circumstances and to give the statutory crossing signals.

*Walker v. Preacher,* 185 S. C. 462, 194 S. E. 868, presents an example of the true office of a sustaining ground under our rule and practice. The respondent there prevailed upon a ground which had been presented to, considered and rejected by the lower court. A similar, later case is *Winthrop v. Mullins,* 211 S. C. 351, 45 S. E. (2d) 332.

The other purported sustaining ground is that the appellant made no objection to the instruction of the court to the jury that they might find a verdict against the company alone.

As pointed out in the order refusing judgment *n. o. v.,* there were specifications of alleged negligence other than that based upon the crossing signal statute, upon which the jury may have, under the instructions, found against the company alone if contributory negligence were a jury issue, which was the trial court's view. Timely motion for direction of verdict in favor of the defendants, generally and separately as to each specification of negligence, etc., had been previously refused. Thus the instruction was correct under the trial court's conception of the evidence; and there was no duty upon appellant under Section 10-1210 of the 1955 Code Supplement to object to the instruction. Manifestly, it would have been futile and was therefore unnecessary. *Smith v. City of Greenville, S. C.,* 92 S. E. (2d) 639.

The denial of the motion for judgment *n. o. v.* was error. Appellant's other questions need not be considered.

Reversed and remanded for entry of judgment in favor of appellant.

TAYLOR, OXNER, LEGGE and Moss, JJ., concur.