Spencer B. THRIFT, Plaintiff,

v.

BELL LINES, INC., and General Drivers, Warehousemen and Helpers, Local Union No. 509, Defendants.

Civ. A. No. 4998.

United States District Court
D. South Carolina,
Greenville Division.

July 27, 1966.

O. Doyle Martin, of Leatherwood, Walker, Todd & Mann, Greenville, S. C., for plaintiff.

P. Bradley Morrah, Jr., and Robert T. Thompson, of Thompson, Ogletree & Haynsworth, Greenville, S. C., for defendant Bell Lines, Inc.

John Bolt Culbertson, Greenville, S. C., for defendant General Drivers, Warehousemen and Helpers, Local Union No. 509.

ROBERT W. HEMPHILL, District Judge.

Defendant Bell Lines, Inc., asks dismissal of the Complaint for failure of plaintiff to state a claim upon which relief can be granted.[1] Bell also moved to make more definite, certain Paragraphs XI, XII, and XIV of the Complaint, in conformity with Rule 12(e),[2] as to allegations of fraud.

The Complaint alleges that Spencer B. Thrift worked as a truck driver for defendant Bell from September 1955 until his discharge in February 1964. At the time of his discharge he held top seniority among the drivers and was a member of Local No. 509, defendant Union. He alleges, and correctly, that a collective bargaining agreement existed between defendants and that the agreement had certain provisions for procedures for discharge, and grievance procedures after discharge, and other actions promulgated in grievance procedures. He alleges his discharge, accuses Bell of effecting the same without proper cause, declares himself physically able to perform the work

---

1. Fed.R.Civ.Proc. 12(c).

2. State as under 9(b) in the original Motion.

and that therefore the discharge was wrong and constituted violation of the collective bargaining contract. He alleges the union improperly represented him throughout. He pursued the grievance procedures after his discharge, relates that there was a deadlock which arose from the fact that defendant Union took the position plaintiff was unjustly discharged and that Bell took the position discharge was because plaintiff could not drive a tractor-trailer unit, and because other employees stated they could not get along with plaintiff. After a deadlock, the dispute was submitted to an Arbitrator and plaintiff alleges that at that stage, and thereafter, not only did Bell furnish evidence to Arbitrator which both defendants knew to be false, but the Union representative refused to offer available evidence refuting the company's position. The gravamen of his Complaint is that he was not properly represented in the dispute, that the precipitate manner in which the grievance procedures were scheduled and followed, the failure of the Union to take issue with the employee's position at arbitration stage, demonstrated that the Union, along with employer, colluded to violate their statutory and contractual duty of fair representation, which *effectively deprived him of a fair and impartial hearing* in accordance with due process of law; he asks damages in the amount of $85,000.00.

At the hearing on the motions counsel appeared for Bell and the Union and were asked to submit supporting authorities. Thereafter counsel for Bell and the Union submitted supporting authorities. Counsel for plaintiff also submitted supporting authorities.

Jurisdiction is conferred on this court by virtue of Section 301, Title III, of the Labor Relations Management Act of 1947.[3] Defendant Union did not make a companion motion, but answered pleading a general denial and alleging its good faith in discharging its duties within the framework of the arbitration proceedings. In addition to its motion defendant Bell's answer incorporated therein first the motion to dismiss; a second defense pled res judicata because of a similar action against defendant Bell in the State court, heard and dismissed; the third, fourth, and fifth defenses of defendant Bell allege generally a justification for the discharge of the plaintiff.

This court finds guidance in the lucid opinion in Thompson v. Brotherhood of Sleeping Car Porters,[4] where a suit by an employee against the Union as bargaining agent [claiming the Union did not represent him fairly and without discrimination] was held to be appropriate in the federal courts and plaintiff was held to have recourse there. Among others there was raised the question of whether the district court had authority to review the correctness of seniority rights according to plaintiff.

In passing upon the sufficiency of the Complaint to state a claim in cases of this nature, the Fourth Circuit ruled:

We have been admonished that to 'adequately set forth a claim upon which relief could be granted,' it is not necessary that the claim be well developed in the complaint for 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' See Conley v. Gibson, supra [355 U.S. 41] at 45–46, 78 S.Ct. [99] at 101–102, 2 L.Ed.2d 80. It cannot be said that Thompson's complaint is deficient under this test.

It is significant the court injected: "Litigation of this particular claim, merely

3. 29 U.S.C. § 185(c)—For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

4. 316 F.2d 191 (4th Cir. 1964).

seeking damages from the Brotherhood, involves only incidentally a consideration of the collective bargaining agreements and Thompson's seniority rights." The parallel is clear.

This court does not have before it the entire proceeding from the state court. Aside from the enabling statute which plaintiff used as entrance to this forum,[5] the Supreme Court of the United States in Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) said "the Court has made it clear that substantive federal law applies to suits on collective bargaining agreements covered by § 204 of the Railway Labor Act * * *. Thus a major underpinning for the continued validity of the Moore case in the field of the Railway Labor Act, and more importantly in the present context, for the extension of its rationale to suits under § 301(a) of the LMRA, has been removed. * * * There are, then, positive reasons why the general federal rule should govern grievances based on severance claims as it does others. * * *" Coincidentally, defendant Bell relies on Maddox to deny plaintiff here. Suffice it to say that the allegations of plaintiff, if only to the effect that the decision reached by virtue of the grievance procedure was erroneous, would not suffice. But plaintiff has proceeded to accuse defendants of using false information and withholding other pertinent information in violation of his rights to have fair and nondiscriminatory treatment when he resorted to grievance procedures. If these rights have been denied him, he has a cause, and this he has alleged.

While this case has no import of racial discrimination, the reasoning in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) is apropos. If the Union here, as was alleged in the Conley case, failed to give Thrift the protection he deserved, and which the bargaining agreement required, and if defendant Bell participated, certainly plaintiff has cause to complain and his grievance should have hearing in this court. In Conley the alleged motive was race; here the alleged motive was collusion to get rid of plaintiff.

Perhaps the natural thought which comes to mind is that Thrift has repeatedly fostered a cause which lacks substance and that his efforts in that regard only manifest the persistence of a dissident employee. To accept this thought as controlling, however, would only perpetuate the real basis of Thrift's complaint. He has vigorously pursued his claim that, as alleged in his complaint here, he has never been accorded a fair hearing on the merits of his grievance because of the failure of his union representative to represent him properly in light of the alleged misconduct on the part of the employer. That other persons and other tribunals have turned a deaf ear, whether for compelling legal reasons or by choice, is now offered as the basis for denying a hearing here.

The issue is plainly whether the hearings which resulted from the exercise of the grievance procedures, and which ended unfavorably to Thrift, act as an absolute bar to this action even if Thrift, if given the opportunity, could prove fraud on the part of Bell Lines directly connected with the hearings coupled with a conscious failure of the union to act on his behalf. Stated otherwise, if the handling of Thrift's grievance was devoid of due process, can this court now say that, as a matter of law, he is entitled to no more? It cannot.

An employee does not choose whether he will submit a grievance for handling according to the bargaining contract's procedures; he is required to do so. If not clearly established prior thereto, this question was settled in Maddox,[6] with the statement that:

As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract griev-

---

5. 29 U.S.C. 185(c).

6. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

ance procedure agreed upon by employer and union as the mode of redress.

But, the Court recognized that:

If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. See Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 * * *.

The Court does not answer the further question of what mode of redress is available, but certain guidelines are shown by the Court's decision in Humphrey v. Moore,[7] cited in the *Maddox* decision.

In Humphrey v. Moore, the suit was by an employee-union member representing a class of others similarly situated against his employer and his union. The charge against the union was that it had deceived them, connived with others to deprive them of contract employment rights, and prevented them from having a fair hearing. The Court held that these "allegations are sufficient to charge a breach of duty by the union in the process of settling the grievances at issue under the collective bargaining agreement.[8] The Court also stated that no fraud was charged against the employer and that the real basis of the complaint against the employers, which was sufficient to state a cause of action, was that it had acquiesced in the union's actions. Justice Goldberg, concurring specially, stated:[9]

I read the decisions of this Court to hold that an individual employee has a right to a remedy against a union breaching its duty of fair representation—a duty derived not from the collective bargaining contract but implied from the union's rights and responsi-

bilities conferred by federal labor statutes.

And,[10]

The remedy in a suit based upon a breach of the union's duty of fair representation may be extended to the employer under appropriate circumstances.

But, Justice Goldberg could not agree with the majority's finding that employer willfulness could be contended to be the acquiescence by the employer in the union's actions. In an extensive article on this area of the law, Justice Goldberg's disagreement was noted and the author concluded:

But the majority of the Supreme Court appears to have rejected Justice Goldberg's * * * position by declaring that individuals shall have recourse to federal actions not only against unions for breach of the duty of fair representation but also against the collective parties for violating the terms of the collective agreement * * *. Rosen, The Individual Worker in Grievance Arbitration, 24 Md.L.Rev. 233, 279–280 (1964).

While the Court in Humphrey v. Moore did not specify the remedy, it affirmatively recognized the right which an aggrieved employee has, and, in that respect, it merely confirmed what many subordinate courts and legal scholars had already decided or advocated. Thus, in Jenkins v. Wm. Schluderberg—T. J. Kurdle Co., 217 Md. 556, 144 A.2d 88 (1958), the court considered the conflicting interests of the parties and concluded that:

[A]s a general rule grievance procedures provided by a collective bargaining agreement should be a bar to suits by individuals against the Employer based upon alleged violation of the agreement, but that such suits are not barred if the Union acted unfairly

---

7. 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).

8. Id. at 343, 84 S.Ct. 363.

9. Id. at 355, 84 S.Ct. at 375.

10. Id. at 356, 84 S.Ct. at 375.

towards the employee in refusing to press the employee's claim through to, and including, arbitration under the collective bargaining agreement. 144 A.2d at 99.

In Ostrofsky v. United Steelworkers of America, 171 F.Supp. 782 (D.C.Md. 1959), aff'd 273 F.2d 614 (4th Cir.1960), where an employee sued his employer and union, the court, applying the reasoning in Jenkins v. Wm. Schluderberg—T. J. Kurdle Co., supra, held that an employee could not sue his employer unless the union acted arbitrarily or in a discriminatory manner and thereby breached its duty of fair representation. This decision with others was cited in Thompson v. Brotherhood of Sleeping Car Porters, supra, for the holding that invidious discrimination by the statutory representative is prohibited. Thompson v. Brotherhood of Sleeping Car Porters, supra, 316 F.2d at 198. Not only is the union forbidden to discriminate or act arbitrarily, but it is obvious that the employer cannot stand idly by, see employee rights dissipated, and thereafter claim the benefits from this abuse or misuse of power. Cf., Wallace Corporation v. N. L. R. B., 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216 (1944).

Plaintiff has a right to bring the action against either or both defendants. As examined by this court his complaint is adequate to present an issue and he is entitled to a trial on the merits. Defendant Bell's motion to dismiss should be denied.

Bell's motion to make more definite and certain deserves denial. Plaintiff alleges that Bell used a false letter to defeat his rights, that the Union knew of it and let it take its place in the evidence against plaintiff; furthermore, the Union failed to use its knowledge, and power to refute the falsity. Bell has been apprised of the basis of the fraud. The rules of discovery are now available.

Motions dismissed.

And it is so ordered.